## HANS C. LOHSE, Respondent, v. GEO. MUEHLE-BACH BREWING COMPANY, Appellant.

**Kansas City Court of Appeals, February 17, 1913.**

1. **MASTER AND SERVANT: Brewery Engine: Repairs.** An employee, with his foreman, was engaged in "packing" some machinery connected with the ice department in a brewery. The machinery consisted among other things of an engine and a large fly wheel, the latter with a lever attached to it, and enclosed by a railing. The job was completed when the employee began to put a belt on a small oil pump which was in a few inches of the railing. The foreman started the engine, the lever being down, which caused a "clicking" noise. The employee, without being told to do so, immediately stepped up to the railing, his body crowded partly between the pump belt and the railing, and attempted to throw up the lever. The foreman heard the noise and, thinking it was something in the engine, immediately stopped it. This action caused the fly wheel to make a reverse revolution, causing the lever to strike the employee and injure him. The whole period of the incident was but a moment. It was *held* that there was no liability to the employee.

2. ———: **Negligence: Emergency: Instant Action: Error of Judgment.** Where an emergency arises, which apparently re-

quires instant action by the foreman of a brewery company in operating an engine, such foreman cannot be regarded as negligent in taking action for safety of the engine and persons, if he adopts a course of action not as safe as some other would have been.

Appeal from Jackson Circuit Court.—*Hon. Jas. H. Slover*, Judge.

REVERSED.

*Lathrop, Morrow, Fox & Moore* for appellant.

(1) If Koehler and Lohse were fellow-servants the master is not liable, and mere difference in rank or authority between servants working together, is immaterial. Card v. Eddy, 129 Mo. 510; Hawk v. Lumber Co., 166 Mo. 121, 129; Fogarty v. Transfer Co., 180 Mo. 490; Radke v. Basket & Box Co., 229 Mo. 1; Rigsby v. Oil Well Co., 115 Mo. App. 297; English v. Shoe Co., 145 Mo. App. 439; Rogers v. Schiele, 148 Mo. App. 53; Padgett v. Iron & Steel Co., 160 Mo. App. 544; Stephens v. Lumber Co., 110 Mo. App. 398. (2) If the two were not fellow-servants then Koehler was chief engineer in actual charge of the engine, and Lohse was simply an engineer off duty; whose interference was not a necessary or solicited service to the master, but the act of a volunteer, done on his own account and on his own responsibility. Stagg v. Tea & Spice Co., 169 Mo. 489; Duvall v. Packing Co., 119 Mo. App. 150; 4 Thomp. Neg., secs. 3748, 3749, 3750; 1 Dresser Employee's Liability, secs. 103, 104. (3) Having voluntarily, unnecessarily and without solicitation from anyone, placed himself in a situation he knew to be dangerous, Lohse was not entitled to any other or further warning. Hirsch v. Bread Co., 150 Mo. App. 162; Stegmann v. Gerber, 146 Mo. App. 104; Herbert v. Mound City & Co., 90 Mo. App. 315; Maupin v. Miller, 164 Mo. App. 149; Smith v. Forrester-Nace Box Co., 193 Mo. 715. (4) Even if Koehler

be considered a vice-principal and his failure to warn
Lohse be regarded as the master's negligence, never-
theless Lohse's concurring negligence was such as to
bar recovery. Richardson v. Mesker, 171 Mo. 666;
Doerr v. St. Louis Brewing Co., 176 Mo. 547. (5) To
say that Koehler's failure to warn Lohse before stop-
ping the engine was an omission of duty on part of the
master, is equivalent to saying that the master is
bound to give notice in advance of his intention to
commit an act of negligence. This seems to us an
utter absurdity.

*T. J. Madden* for respondent.

ELLISON, J.—Plaintiff's action is for bodily in-
juries received by him while engaged in defendant's
service. He obtained a verdict in the trial court for
thirty-seven hundred and fifty dollars. A remittitur
of seven hundred and fifty was dequired by the trial
court and final judgment was rendered for three thou-
sand.

Defendant operates a brewery, with the usual ma-
chinery for such institutions. This case concerns the
starting and stopping of the engine and its effect upon
a large fly wheel. The work being done at the time of
the accident was repacking the ice machine. It be-
came necessary to turn the fly wheel, which was en-
closed in a railing three feet high and which was near
sixteen feet in diameter, and to which a lever was at-
tached. After it was moved and while plaintiff was
standing within three or four feet, throwing the belt
on a "little oil pump on the side," which was used for
oiling the plunger rod, the foreman, who stood at the
throttle nearby, started the engine. The lever was
down and as the fly wheel began to move the lever made
a "clicking" noise. It was shown that when the en-
gine is stopped the fly wheel will reverse itself and

169 Mo. App.—30

make one or two revolutions backwards. The reasons why the clicking noise was made by the lever and why the wheel made a revolution backwards, were given in testimony, but they are not of consequence in determining the case. It is enough that the facts are as we have stated. Plaintiff was an engineer of long experience in defendant's service and he knew by the noise that the lever was down and he immediately stepped to the fly wheel, partly crowding his body in between the belt on the oil pump and the railing around the wheel, *a space of only five or six inches*. In the position he caught hold of the lever and attempted to throw it up. His first effort was not stong enough to be successful and he grabbed for it again, when at that instant the engine was stopped by the foreman and the immediate reverse action of the wheel brought the lever back against the railing with sufficient force to crush it and to cause a piece to strike plaintiff, inflicting serious injury. The whole period of time, from starting the engine to the accident, was but a moment. Plaintiff at some parts of his testimony said it was instantly. By others it was said to have been a second or two. Plaintiff himself admitted that the lever remaining down and making the noise would not have resulted in any harm to machinery or persons; and that he quit his work and stepped over to put it up without any direction from the foreman and without saying anything to any one of his intention. A witness stated that plaintiff "was putting a little belt that run a little oil pump that pumps the oil on the ammonia rod, and Mr. Koehler (the foreman) went to the throttle and started the engine," and then immediately plaintiff stepped over to throw the lever up.

To recaputulate, the situation was this: After everything was in readiness to start the engine the foreman went to the trottle, plaintiff being at other work, and started the engine in the usual way. A harmless noise was made and plaintiff, without an order to do

so, and without telling any one of his intention, put himself in the contracted space above described and attempted to throw up the lever. We have already stated that the negligence charged against the defendant is that the foreman failed to notify plaintiff that he was going to stop the engine. But, in the circumstances stated, ought not plaintiff to have notified the foreman at the throttle that he intended to go into that perilous position? We think he should, and that it was clearly negligence in him not to do so.

But plaintiff's theory is that the foreman saw him go into it, and saw that he was endeavoring to throw up the lever, and that therefore he should not have stopped the engine. A consideration however arises here which plaintiff excludes from his theory. When the foreman started the engine and heard the noise, unlike plaintiff he did not know what caused it. He thought "something had gotten inside" some part of the machinery and, as he expressed it, "it kind of scared" him and he instantly reversed the throttle. Plaintiff concedes his fright and attempts to bolster the case by attributing the foreman's excitement to knowledge of the lever being down and plaintiff's effort to throw it up. But the foreman was alarmed by the noise in fear of something that might work havoc with all concerned, and what could be more natural than that he should quickly stop the engine? Ought he to be charged with a neglect of duty to plaintiff in that moment of time which covered the incident? Plaintiff had not been ordered to do what he did; both he and the foreman doubtless thought they were doing a good service, but why should the foreman be selected for blame? The truth is, the occurrence was an unfortunate accident the primary cause of which must be attributed to plaintiff himself. [Glover v. Bolt & Nut Co., 153 Mo. 327, 341.]

Our views find apt illustration in two cases recently in this court. [Mathews v. Met. St. Ry., 156

Mo. App. 715, and White v. Railroad, 159 Mo. App. 508, 514.] In the former a man had attempted to board a moving car on a viaduct. He was swinging on the platform step, when the conductor, with the best of motives, undertook to pull him up until he struck an iron rod or support and was knocked to the ground below. If the conductor, instead of the effort he did make, had signalled to the motorman to stop the car, he might have saved him. In the latter, a railway engine rounded a curve when the engineer suddenly saw a man lying asleep on the track too close for him to stop the train, yet he attempted to do so and killed the man. If he had blown the whistle he might have awakened him in time for him to have rolled off. In each of these we held the emengency of the situation excused possibly mistaken effort.

It appears to us that this judgment is without legal support, and that it would be an injustice to allow it to stand. It is accordingly reversed. All concur.