### WILL HICKS v. THE STATE.

#### No. 7966. Decided February 20, 1924.

#### Rehearing denied April 30, 1924.

1.—Murder—Experimental Testimony—Practice in Trial Court.

Where, upon trial of murder, defendant complained because the State's witness was permitted to place State's counsel upon a table and arrange his body and limbs in the position of deceased at the time the body was discovered, it being necessary for the State to rely upon proof of circumstances to refute defendant's statement as to the manner in which the killing occurred, there is no reversible error. Following Stembridge v. State, 250 S. W. Rep., 180.

2.—Same—Evidence—Husband and Wife—Impeachment.

After defendant's wife had testified for him and had been cross-examined she was recalled by the State to lay a predicate for impeachment, and was asked whether she did not tell the deputy sheriff shortly after the killing that there had been no prior trouble between her husband and deceased, etc., which she denied, whereupon the deputy sheriff testified that she did so state. This was no reversible error.

3.—Same—Rule Stated—Husband and Wife—Cross-Examination.

The wife of the defendant may be impeached by proof of contradictory statements as to material matters inquired about on her examination in chief, and it is not required that the exact matter should have been gone into by defendant on his examination of the wife. Following: Bell v. State, 88 Texas Crim. Rep., 64.

**4.—Same—Argument of Counsel—Declaration of Defendant.**

Where at the time appellant was called upon to plead to the indictment he answered, "I killed the man but I am not guilty," held that a complaint that the district attorney in his opening argument said that defendant had said, "Yes, I killed the man" was not reversible error, under the facts of the instant case.

**5.—Same—Argument of Counsel—Bill of Exceptions—Motion for New Trial.**

Where no objection was made to the argument and no request for instructions to disregard the same, it was too late to make the objection in the motion for new trial. Following: Weige v. State, 81 Texas Crim. Rep., 476, and other cases.

**6.—Same—Evidence—Impeaching Own Witness.**

In view of the negative answer of the witness for the State as to certain statements made by him derogatory to the State's interest it need not be further considered.

**7.—Same—Rehearing—Communication to Jury—Practice on Appeal.**

The recitation in the order in the court below that the court heard evidence on the question of misconduct of jury is deemed sufficient to show that the truth of the facts set up in the motion for new trial was controverted, and the defendant should have preserved the evidence and presented it to this court; otherwise, it must be assumed that the ruling of the lower court is correct. Following: Lopez v. State, 208 S. W. Rep., 167 and other cases.

**8.—Same—Motion for New Trial—Practice on Appeal.**

This court has never held that the trial court is without power to hear evidence by affidavits in such cases, and counsel for appellant misapprehends a former opinion of this court. Distinguishing: Atkinson v. State, 247 S. W. Rep., 286; Campbell v. State, 37 Texas Crim. Rep., 609.

Appeal from the District Court of Fannin. Tried below before the Honorable Ben. H. Denton.

Appeal from a conviction of murder; penalty, twenty years imprisonment in the penitentiary.

The opinion states the case.

*S. F. Leslie, Fred S. Rogers* and *Thomas P. Steger,* for appellant. On question of impeaching witness: Hayes v. State, 84 Texas Crim. Rep., 349; Bennett v. State, 24 Texas Crim. App., 73.

On question of filing bills of exception: McConnell v. State, 200 S. W. Rep., 842; Sharp v. State, 71 Texas Crim. Rep., 633, and cases cited in opinion.

*Tom Garrard,* Attorney for the State and *Grover C. Morris,* Assistant Attorney for the State. On question or argument of counsel: Cockrell v. State, 85 Texas Crim. Rep., 326, and other cases.

HAWKINS, JUDGE.—Appellant is under conviction for the murder of Sy Parrigan with punishment assessed by the jury at twenty years confinement in the penitentiary.

The killing occurred on the morning of March 30th, 1922, in a barn belonging to appellant and not very far from his residence. No one was present save appellant and deceased. Two shots were fired by appellant both striking deceased. The State had witnesses describe with much detail the exact position in which the body of deceased was lying and appear to have relied largely upon the peculiar cramped position in which it was found, together with other circumstances in connection therewith, to combat the defensive and direct testimony of appellant and his wife. The wounds upon deceased were described. Both entered from the front; one passed almost through the body ranging downward, lodging some ten or eleven inches lower than the entrance wound; his feet seemed to be cramped back under his body in some way. Under his right hand was a knife and also quite a quantity of cut shavings from a corn cob; some of these shavings were on his legs and some under them; a cob was lying near his head which showed to have been whittled on. The State rested its case in chief upon the proof of conditions found at the scene of the killing, the character of the wound and the position of the body. As we understand the record, it was the contention of the State that these conditions were such that they met and refuted the theory of self-defense supported by the positive testimony of appellant. Deceased and his wife had separated about fifteen days before the homicide. Appellant and his wife testified substantially that deceased had left some of his property in charge of appellant and said that he (deceased) was going to Oklahoma and asked appellant to look after these things while he was away; that deceased advised appellant to let his (deceased's) wife have anything she wanted even if it was all of the property; that deceased returned on the 28th of March at which time he seemed to have changed his mind with reference to the property and said his wife should not have any of it, that he intended to die by it and appeared to be angry because appellant was insisting on carrying out deceased's original instructions with reference to the property. They both testified that deceased made threats against appellant but remained at his house during the entire night of March 28th, leaving with his eleven or twelve year old boy the next morning; that he returned again on the morning of March 30th and made inquiry for appellant from children who were playing in the yard; that appellant soon thereafter proceeded to the barn and was discovered by deceased who immediately followed cursing appellant; that he was cursing when he entered the barn behind appellant, and that the shooting immediately followed. Thus far the testimony of appellant and his wife are substantially the same. Appellant says when deceased opened the door to the barn appellant told him not to come in, to which deceased replied that he was going "to cut his G—— d—— throat;" that appellant at

the time was attending to a call of nature; that he jumped up and when deceased stepped inside the door he saw a knife in his hand and that appellant fired two shots. Appellant seems to have been very deliberate in his testimony, explaining in detail how he aimed; that he intended to kill if it was necessary to keep deceased off of him, and described accurately where he hit deceased and how he knew he hit him in these particular places because that was where he had aimed to hit him. The State proved by Johnny Parrigan, twelve year old son of deceased, that his father and appellant had been in the barn some thirty minutes before the shots were fired; that he and appellant's son had been down about the barn playing but that appellant told them to go back and not come down to the barn; that he and the other boys went back and sat down on a cultivator near a wagon; that they were down near the lot at the time appellant told them to go back.

Appellant complains because a State's witness was permitted to place State's counsel upon a table and arrange his body and limbs in the position of deceased's at the time the body was discovered. No one was present in the barn at the time the killing occurred except appellant and deceased. It was necessary for the State to rely upon proof of circumstances to refute appellant's statement as to the manner in which the killing occurred. It appears to have been the opinion of counsel for the State that this depended largely upon the exact position of deceased's body when discovered immediately after the killing. We see no objection to the character of demonstrative evidence used by the State in this instance. Wharton's Crim. Evidence, Vol. 2, 10th Edition, Section 518A and 518C. Almost this exact question, and certainly the same in principle, was decided against appellant's contention in Stembridge v. State, 94 Texas Crim. Rep., 207, 250 S. W. Rep., 180.

Bills of exception three and four will be considered together as they relate to the same matter. After appellant's wife (Mrs. Lula Hicks) had testified for appellant and had been cross-examined she was recalled by the State to lay a predicate for impeachment. She was asked if she did not state to deputy sheriff Leeman shortly after the killing that there had been no prior trouble between her husband and deceased, and that she knew nothing about any difference or difficulty between them until she heard the shots fired. She denied making such statement. Leeman testified that she did make it. Appellant objected to this procedure on the ground that the subject inquired about by the State was new matter about which appellant had not made inquiry. On direct examination the wife testified for appellant about deceased having left his property in appellant's custody at the time he and his wife had separated; that when deceased came back a few days before the killing he had a shotgun and a pocket knife, and also a bottle of medicine which he said would

kill a hundred people; that during the night at the house deceased continually talked about killing people; that he was dissatisfied be· cause appellant had loaded the household goods on a wagon and was getting ready to haul them away in obedience to instructions given by deceased at the time he left some fifteen days before; that deceased said his wife should not have any of the property and that he would die by it. She further testified that deceased "wanted to jump on Will (appellant) there in the house;" that she begged him not to have any trouble as some of her children were sick, to which request deceased replied that he would "get Bill further down the road;" that he said this several times; that deceased left their house the next day but came back on the morning of the killing; that when appellant went to the barn deceased "just fell in after him, cursing;" that she saw deceased jerk the barn door open and said, "I never heard the like of cursing in my life." In his Annotated P. C., Section 153, page 87, Mr. Branch cites many cases and announces the correct rule that: "The wife of the defendant may be impeached by proof of contradictory statements as to material matters inquired about on her examination in chief."

The objection urged by appellant is that he did not examine his wife with reference to any conversations she may have had with Leeman relative to the killing. If the impeaching evidence was pertinent to what she had testified in appellant's behalf on direct examination it would be proper for the State to impeach her thereon. It is not required that the exact matter should have been gone into by appellant on his examination of the wife. The testimony of the wife given before the jury tended to support appellant's theory of the killing and is not at all in consonance with what she told Leeman soon thereafter. From her evidence she would have the jury believe that deceased was the aggressor in the difficulty, had threatened two nights before to do appellant violence and was undertaking to carry that threat into execution at the time the killing occurred; that he followed her husband into the barn. cursing him at the time. She not only asserts that this previous trouble existed between her husband and deceased but positively avers that she had knowledge thereof. There is no merit in appellant's contention that the impeachment related to a matter not inquired about by him. Bell v. State, 88 Texas Crim. Rep., 64, 224 S. W. Rep., 1108.

Bill of exception number five recites that at the time appellant was called upon to plead to the indictment he answered, "I killed the man but I am not guilty." Complaint is made that the district attorney in his opening argument for the State, among other things, said that appellant said, "Yes, I killed the man." This was objected to on the ground that the district attorney was referring to appellant's statement when arraigned and not to his evidence before the

jury. The court approved this bill by stating that no instruction relative to the argument was requested, and that in his opinion the statement made by the district attorney was authorized by the testimony of appellant. From an examination thereof we think the learned trial judge is correct. That appellant did the killing is not questioned.

In his bill of exception number six appellant complains of certain other arguments of the district attorney. We do not set out the argument complained of because the bill can not be considered. The learned trial judge certifies that no objection was made to the argument, no exception taken thereto, and no request for instructions to disregard it was presented to the court. It appears from the record that the first information the trial judge had that any complaint was made to the argument was when it was presented in the motion for new trial. It was then too late to complain of a matter which, if it occurred, had passed beyond the power of the court to correct. We do not discuss the matter further than to refer to the following cases all of which discountenance the consideration of objections to argument where presented in like manner as here appears. Weige v. State, 81 Texas Crim. Rep., 476, 196 S. W. Rep., 524; Spears v. State, 91 Texas Crim. Rep., 51, 237 S. W. Rep., 270; Simmons v. State, 93 Texas Crim. Rep., 421, 248 S. W. Rep., 392; Harris v. State, 93 Texas Crim. Rep., 544, 249 S. W. Rep., 485.

Horace Hicks, son of appellant, was placed upon the witness stand by the State. He testified that his father went into the barn first and had been in there three or four minutes before deceased went into the barn and that the shooting occurred immediately after deceased entered. This witness was later recalled by the State and asked if he "did not immediately after the shooting tell Mr. Leeman that deceased and witness' father went into the barn together, and that his father told witness and the other boys to go on away from there?" Objection was interposed to this question on the ground that the State had made Horace Hicks its witness and had no right under the circumstances to lay a predicate for his impeachment. This objection being overruled witness stated that he did not make such statement to witness Leeman. As it appears from the bill the matter seems to have ended with this denial on the part of the witness. The bill is number seven. The learned trial judge in approving it made the following notation. "This bill is approved with the same explanation as given to bill of exception number eight." We find no bill number eight in the record and therefore must appraise the matter from bill number seven alone. In view of the negative answer of the witness we are left to determine whether the question itself presents such error as would call for a reversal. We do not think so.

The point raised by appellant's bill number two is not briefed but we have examined it and think it is without merit.

Finding no errors in the record which would call for a reversal, the judgment is affirmed.

*Affirmed.*

ON REHEARING.

April 31, 1924.

LATTIMORE, JUDGE.—Appellant insists that his contention that there was a communication had with the jury while in retirement, was overlooked by us and not discussed in the original opinion. We regret that the matter is not in such shape as that we could give it consideration, because of lack of proper support in the record. The order of the learned trial judge overruling the motion for new trial recites that he heard "the evidence adduced." What was said evidence? Was it by affidavit or was it oral testimony? Answer to these questions is not found in the record either by bill of exceptions or statement of facts filed during term time. Black v. State, 41 Texas Crim. Rep., 185. The recitation in the order of the court below that the court heard evidence is deemed sufficient to show that the truth of the facts set up in the motion for new trial, is controverted. Cade v. State, 96 Texas Crim. Rep., 523, 258 S. W. Rep., 484. In this case the State controverted the allegations of the motion for new trial by a general denial, and further in its controversy set out certain statements attributed to officers who went to the jury room but which statements and the affidavits containing them are vastly different from the statements contained in the affidavit attached to appellant's motion, both in fact and in legal effect. It being then stated that the court heard evidence upon the presentation of the motion for new trial, and there being nothing to show what said evidence was, what must this court do? When the court hears evidence and upon it decides an issue, he who wishes to complain on appeal of such decision must preserve said evidence and present it to the appellate court, else the assumption of correctness as to the actions of the lower courts will prevail. Affidavits attached to motions are but parts of the pleading. Lopez v. State, 84 Texas Crim. Rep., 422, 208 S. W. Rep., 167, and Reyes v. State, 81 Texas Crim. Rep., 588, 196 S. W. Rep., 532, cite numerous authorities on this point. We think appellant misapprehends the opinion in Atkinson v. State, 93 Texas Crim. Rep., 305; 247 S. W. Rep., 286, in which, because of the failure to have an attorney to represent him during the trial, we said there were no bills of exception, etc. *during the trial.* We find nothing in said opinion to justify the conclusion that the matters complained of in connection with the motion for new trial when appellant did have an attorney, were not properly pre-

served and here presented. Under the peculiar facts in that case this might or might not have been true and still our conclusions have been the same. Nor do we find anything in Campbell v. State, 37 Texas Crim. Rep., 609, out of harmony with what we have said. The evidence heard by the trial judge on the motion for new trial in that case seems to have been by affidavits and mention is made of "affidavits introduced" etc. This court has never held that the trial court is without power to hear evidence by affidavits in such case. The act of the trial court held erroneous in the case last referred to was in letting a juror separate from his fellows unaccompanied by an officer. The proposition as to how that question was presented to the appellate court, was not debated in the opinion. The decision in that case was prior to Black v. State, supra.

We have again reviwed the other contentions made by appellant in his motion and have concluded that the matters referred to were properly disposed of in our original opinion.

The motion for rehearing will be overruled.

*Overruled.*