### Roy McNeely v. The State.

No. 10479.   Delivered March 2, 1927.

Rehearing denied May 11, 1927.

**1.—Burglary—Evidence—Possession of Stolen Property—Held Admissible.**

Where, on a trial for burglary, there was no error in admitting evidence that appellant was found in possession of a part of the stolen property, which was taken in the burglary, some five and one-half months after the burglary occurred. Proof of the possession of stolen property, whether recent or remote, may always be made, and is a circumstance to be considered by the jury, along with all other facts in evidence. Whether the possession alone, or in connection with other facts, will justify the conviction must depend largely upon each particular case. See Garcia v. State, 96 Tex. Crim. Rep. 324.

**2.—Same—Charge of Court—On Defensive Theory—Held Proper.**

Where, on a trial for burglary, the court charged the jury that if 'they believed that the canned fruit in question, found in appellant's possession, was not the property lost by Parker, or if they had a reasonable doubt thereof that they could not consider such possession as any evidence of appellant's guilt. In view of the fact that there was other incriminative evidence, aside from the possession of the stolen property, this charge was correct.

**3.—Same—Evidence—Impeaching Wife—Held Proper.**

Where the wife of appellant had testified in his behalf that the canned fruits, etc., found in her residence and buried in the garden, and which were identified as the stolen property, belonged to and had been canned by her, there was no error in permitting the state, after a proper predicate, to impeach her by proving statements made by her to the officers, that she had put up the fruit which was in the house, but knew nothing about where that came from which was buried in the garden, but that it was buried one night by Roy and the boys. See Bell v. State, 88 Tex. Crim. Rep. 64, and other cases cited.

ON REHEARING.

**4.—Same—Charge of Court—Recent Possession—Explanation—Rule Stated.**

It is well settled that a charge on the explanation of recent possession of stolen property, is only necessary in a case where the recent possession alone is relied on as a circumstance to justify the conclusion of guilt, and then only when such explanation is given when the right of such possession is first called in question. See Robinson v. State, 22 Tex. Crim. App. 690, and other cases cited.

**5.—Same—Continued.**

It is also the settled rule that when a full charge on circumstantial evidence is given it is not necessary to give a charge specially on the question of recent possession. See Bonner v. State, 35 S. W. 650.

**6.—Same—Charge of Court—On Defensive Theory—Held Sufficient.**

Appellant complains of the failure of the court to affirmatively submit his defense that the property found in his possession was not the same that was stolen from the burglarized premises. Considering the charge as a whole, we are of the opinion that this defense was fairly submitted. Unless some omission in the charge given be calculated to affirmatively injure the rights of the accused, we are forbidden by statute to reverse for such matters.

Appeal from the District Court of Lubbock County. Tried below before the Hon. Clark M. Mullican, Judge.

Appeal from a conviction of burglary, penalty two years in the penitentiary.

The opinion states the case.

*Vickers, Campbell & Schenck* of Lubbock, for appellant. On remoteness of possession of stolen property, appellant cites: Yates v. State, 37 Texas, 204; Beggs v. State, 17 Tex. Crim.

App. 221; Menchaca v. State, 125 S. W. 20; Curlin v. State, 23 Tex. Crim. App. 684, and Boyd v. State, 26 Tex. Crim. App. 570.

On explanation by defendant, he cites: Johnson v. State, 12 Tex. Crim. App. 485, and Irvin v. State, 13 Tex. Crim. App. 496.

*Sam D. Stinson,* State's Attorney, and *Robert M. Lyles,* Assistant State's Attorney, for the State.

HAWKINS, JUDGE.—Conviction is for burglary of a house belonging to J. P. Parker, punishment being two years in the penitentiary.

About the first of February, 1923, J. P. Parker and his family moved from Comanche County to Lubbock County, bringing with them 225 jars of fruit, consisting of peaches, sweet pickles, berries of different kinds, tomatoes, preserves, cucumbers, and three cans of soap. All of the articles in question were stored in a small barn, the window being nailed up and the door fastened. On the night of March 20, 1923, the barn was burglarized and all the articles enumerated were stolen. The matter was promptly reported to the officers. Examination revealed that a car had been driven into the pasture and stopped between 150 and 200 yards from the barn. The tracks of three persons were found going backward and forward from this point to the barn, and a place under the fence indicated that a box or something had been dragged through. The car tracks were traced from where the car had turned around and started back to the road. At one point it had run into the fence and hit a post. From the tracks it could be seen that it was the left front side of the car which struck the post. At the point where the car had struck the post stains were discovered in the sand which the witnesses described as looking like stains from fruit juice. The tracks indicated that the car in question had 30x3-inch tires in front and 30x3½ inch tires on the rear. The track of the left front wheel showed the casing to be non-skid or rough; tracks of the rear wheels indicated that the casings had been non-skid but were considerably worn and were of a different tread. The casing on the right front wheel left a smooth impression. We quote from the statement of facts—"The left front showed a print of a rough tread and the right front was smooth." The officers in company with Mr. Parker searched various places. About three days after the burglary they went to the home of appellant with a search warrant. They found a car with casings corresponding to the tracks made by the car in the pasture.

The car was in a somewhat dilapidated condition. The front left fender was bent down and had fresh scratches on it, and between the seats stains were found which were thought to be berry stains. One of the officers testified that some berry seed were found in this stain. None of the stolen property was discovered in the house or about the premises of appellant upon this occasion, but no search was made of the garden. Appellant was not arrested at that time nor any complaint filed against him, the officers believing the evidence was insufficient to justify such action. Appellant accounted for the new scratches on the left fender, claiming he had run into a gate a few days previous. He denied that the stain in the car was berry stain, but claimed it was blood which had gotten on the car from a butchered hog he had hauled into town. About the last of August, some five and a half months after the burglary another search was made of appellant's premises. At that time there were found buried in the garden fifty-five jars of fruit, corresponding with the stolen property. The ground where this property was buried had sunk down. The witnesses testified that the conditions there indicated that the fruit had been buried some time as the dirt was settled firmly around the jars. Other canned fruit was found in appellant's house and taken to town with that recovered from the garden. Mr. Parker and his wife testified positively that the fruit found in the garden was a part of that stolen when the barn was burglarized, but declined to identify as belonging to them that taken out of the house. It was returned to appellant. This fruit, pickles and other articles stolen were in ordinary Mason and Kerr jars which Mrs. Parker claimed to have put up before leaving Comanche County. There was nothing distinctive about any of the fruit unless it be some peaches. Parker and his wife testified that the sweet pickles were put up from what they called "Cling Elberta" peaches, raised in their orchard in Comanche County. Appellant and his wife claimed they had put up the fruit found buried in the garden, as well as that found in the house; that the peaches claimed and identified by the Parkers had been given to them by appellant's father from his orchard and pickled by Mrs. McNeely. The state combatted this by bringing the man who had sold the place to appellant's father, and who testified there were no peaches in the orchard on that place which would make sweet pickles similar to those found buried.

Appellant objected to the evidence of Mr. and Mrs. Parker identifying the buried fruit as belonging to them on the ground that its possession by appellant was too remote from the date of

the burglary.  He also requested the court to instruct the jury that they could not consider as evidence against him the fruit claimed to have been stolen from the burglarized house because it was not found in his possession recently after the burglary, that is, because his possession thereof was too remote.The admission of the evidence objected to and refusal of the special charge are made the basis of complaint.  In support of his contentions appellant refers us to the cases of Yates v. State, 37 Texas, 203; Bragg v. State. 17 Tex. Crim. App. 219; Menchaca v. State, 125 S. W. 20; Curlin v. State, 23 Tex. Crim. App. 681; Boyd v. State, 24 Tex. Crim. App. 570.  The question of possession of recently stolen property was in all of those cases, some of them turning upon charges given or refused, and some holding the fact of possession alone was too remote to support conviction, but we think none of them uphold appellant's proposition which seems to be that because the alleged stolen property was not found in his possession until five and a half months after the burglary, that therefore proof of its possession should not be admitted at all.  Appellant's contention is not deemed sound.  Proof of the possession by accused of stolen property, whether recent or remote, may always be made and is a circumstance to be considered by the jury along with all other facts in evidence.  Whether the possession alone or in connection with other facts will justify the conviction must depend largely upon each particular case, and the manner of exercising possession whether openly or secretly would be significant.  Under the facts of the present case what was said by this court in Garcia v. State, 96 Tex. Crim. Rep. 324, 257 S. W. 558, seems peculiarly applicable.

"The finding of the fruits of the burglary in the possession of the appellant three months after the commission of the crime, part of the property exhibiting evidence of use, such as one of the pairs of shoes, and another part of the property showing to have been kept by someone without use until recently before its discovery in possession of appellant, would seem to us to entirely meet any objections as to the length of time between the burglary and the discovery of the property in appellant's possession.  One might unlawfully take a quantity of property and conceal it for a much longer time than that which elapsed here before its discovery and still the possession of same by the accused furnish sufficient evidence to justify his conviction."

The state's evidence shows that the jars of fruit had been buried for quite a while.  Appellant's explanation of why he buried it, taken in connection with his contention that it was not an unusual occurrence for people in his neighborhood to so

treat their canned fruit, and the testimony of some of his neighbors about burying their own fruit, were all matters for the jury. In connection with these things the jury also might have considered significant. the fact that tracks of appellant's car corresponded with those found on the ground near the burglarized house, also the recently scarred left fender of the car and the stains in the car. The jury was not bound to accept appellant's explanation that the fender was scarred by running into a gate, nor that the stain in the car was blood. While one officer said he saw no berry seeds in the stain, he did positively assert that it was not blood, and said the other officer claimed to have found some berry seed on a rod under the car beneath the crack in the floor. The other officer swore positively that he found berry seed. All of these matters were questions of fact to be determined by the jury. The court properly refused to instruct a verdict of not guilty. We do not feel authorized under the facts to say the evidence is insufficient to support the verdict.

The court told the jury in paragraph eight of his charge if they believed the fruit in question found in appellant's possession was not the property lost by Parker, or if they had a reasonable doubt thereof, they could not consider such possession as any evidence of appellant's guilt. The charge was objected to as assuming that the possession of appellant (if of Parker's property) was that of property recently stolen. This raises the same question already discussed. There was no error in assuming possession in appellant. He claimed both ownership and possession. No issue arose on this point. The charge was further objected to because it was claimed that instead of charging as he did the court should have told the jury if they found the fruit in question did not belong to Parker they should acquit appellant. If the court had given the instruction contended for he would in effect have withdrawn from the consideration of the jury other criminative facts in evidence and would have assumed to pass on them instead of leaving the jury to determine their cogency. What we have here said also disposes of the criticism directed at paragraph nine of the charge.

In bill of exception four complaint is made because the state laid a predicate for impeaching appellant's wife by eliciting from her testimony that the jars of fruit buried in the garden were her property and not the property of the prosecuting witness Parker, and in asking her if she had not made a statement contrary to this to the witnesses Ford, Russell and Johnson, it being the contention of appellant that this examination was with reference to a matter not brought out on direct examination of appellant's wife and not germane thereto. Bill number five is

a complaint going to the same matter wherein objection was interposed to the witnesses Ford, Russell and Johnson testifying that appellant's wife told them that she "did not know anything about the fruit that was buried in the garden, but that Roy and the boys brought it one night and buried it, but that she claimed the fruit in the house." The contention of appellant cannot be sustained. We have carefully examined the testimony of Mrs. McNeely elicited on direct examination and find that she testified she had always canned fruit every year since she and appellant had been married; that she did some canning during the year 1923. She enumerated the various kinds of fruit and vegetables canned by her at that time, embracing all the things found buried in the garden. She also claimed that the peaches had been given to them by appellant's father; that part were put up in sweet pickles and part of them canned; also that her husband buried the fruit in the garden and that it had been buried about a month when the officers found it; also that at the time the officers came to the place the latter part of August she had most every kind of fruit and vegetables in the house; that none of the jars were taken by them out of the house, but only those taken from the garden, but that the next day they came back, and then also took the ones from the house, and further said they took not only those from the house without her permission, but also took those from the garden without permission. It is apparent from a reading of the direct examination of Mrs. McNeely that it was her purpose to convey to the jury the idea that she canned the fruit which was found in the garden. Upon cross-examination she testified that it had been the custom of her and her husband to bury fruit when they had no place to put it, although admitting they had never buried any before because they had a cellar or dug-out in which to keep it; also that some of the peaches found in the house had been buried but had been dug up a day or two before the officers made the search. It occurs to us the entire cross-examination of the wife was germane to her examination-in-chief and that no error was committed in permitting the state's counsel to ask her if she had not told the officers she had put up the fruit which was in the house but knew nothing about where that came from which was buried in the garden, but that it was buried one night by Roy and the boys, and when she denied making this statement to prove by the officers that she had so told them. Bell v. State, 88 Tex. Crim. Rep. 64, 224 S. W. 1108; Hicks v. State, 97 Tex. Crim. Rep. 373, 261 S. W. 579; Soderman v. State, 97 Tex. Crim. Rep. 23, 260 S. W. 23.

The court properly limited this to impeaching purposes in his charge.

Finding no error in the record which justifies a reversal, the judgment is affirmed.

*Affirmed.*

ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—Appellant urges that he was entitled to a charge on reasonable explanation of recently stolen property. There was no explanation made by appellant when the alleged stolen property was found in his possession in August, 1923, hence no need for such charge. Cleveland v. State, 57 Tex. Crim. Rep. 356. We might further call attention to the well-settled holding that only in a case where recent possession alone is relied on as a circumstance sufficient to justify the jury's conclusion of guilt is it necessary to give any such charge, and then only when such explanation is given when the right of such possession is first called in question. Robinson v. State, 22 Tex. Crim. App. 690; Roberts v. State, 17 Tex. Crim. App. 82; Boyd v. State, 24 Tex. Crim. App. 570; Leeray v. State, 92 Tex. Crim. Rep. 293. We might also refer to the fact that when a full charge on circumstantial evidence is given, it is not necessary to give a charge specially on the question of recent possession. Bonners v. State, 35 S. W. 650.

Appellant again insists upon the lack of testimony. We recapitulate. Mr. Parker moved with his family to Lubbock County in February, 1923. He brought a large quantity of preserves, sweet pickles, berries, etc., in fruit jars, which he placed in a barn and fastened same up. On March 20 following, said barn was burglarized and the preserves, etc., stolen. Appellant had been twice to Parker's place before the burglary, once on February 6 and again three or four weeks afterward. He was at the place something like an hour on the second visit, making no explanation of his purpose save that he wanted a drink of water. He knew that the Parkers had the preserves, etc. A daughter of Mr. Parker testified that she stated in appellant's presence that her father had about 225 jars of fruit at said place. Appellant owned a Ford car. Examination of the same the third day after the burglary revealed that its left front casing was a new non-skid, rough tread, 30x3; its right front casing was an almost smooth 30x3, and its two rear casings were 30x3½ worn smooth. A car with casings on each wheel corresponding to the above was driven to a point between one hundred and two hundred yards from Parker's barn on the night of March 20. Tracks of three persons went back and forth

from where the car stopped to said barn. The ground showed where boxes were dragged between the barn and where the car stood. Where the car turned the tracks of each of the casings were observed separate and plain. Not far away the car ran into a wire fence and part of the way under some of the wire. The left front part of the car struck a post. The soil was sandy. Dark stains were observed on the ground where the car had been. When the officers got to appellant's place, after observing the casings on appellant's car and their correspondence with the tracks above mentioned, it was further observed that the left front fender was bent and had a number of fresh scratches on it. Dark stains were seen on the floor boards of the car. One of the officers got under it and said dark stains were on some part of the car and that berry seeds were in the stain. The officers found no fruit on the occasion of this visit to appellant's premises. In August following they again went to appellant's place, and buried in his garden they found a large quantity of preserves, sweet pickles, berries, etc., in fruit jars, which were identified by the Parkers, father, mother and daughter, as property taken from said burglarized house. Appellant was not at home at the time. His wife, according to three men who appeared disinterested, told them she knew nothing of the fruit buried in the garden, that appellant and some boys "brought it there one night and buried it." The officers who found the buried fruit said the earth was packed solidly around the jars, the tops had rusted and it appeared to them to have been buried four or five months. The statement of appellant's wife just mentioned was limited in the court's charge to the purpose of affecting her credibility, she having taken the stand and affirmed that the fruit found on their place was put up by herself and appellant, and buried in July before it was found in August, and she denied making the statement to the three men above referred to. We have given only the state's testimony, it being our purpose merely to make plain the fact that from the state's standpoint the proof was ample to justify the conviction. Conflicts in the testimony are for the jury.

Appellant excepted to the charge of the court as follows:

"The court does not affirmatively charge the jury to acquit the defendant if the alleged fruit did not belong to the prosecuting witness Parker; neither does it instruct the jury to acquit the defendant if the alleged fruit belonged to him or if it belonged to some other person than the prosecuting witness Parker. The defendant specially requests and urges the court to so affirmatively charge said defense in his main charge and says that such charge is erroneous because it does not do so. * * * Also,

the charge ignores his affirmative defense in that the evidence raises the issue that the alleged fruit claimed to have been stolen was not found in the defendant's possession until about six months after the alleged burglary, and that his possession and connection with such fruit was subsequent to the alleged burglary, the jury should be affirmatively instructed to acquit the defendant even though the jury should believe the fruit belonged to the prosecuting witness J. P. Parker."

It will be noted that in this exception appellant called the attention of the trial court to the fact that his affirmative defense was that the alleged stolen property was not found in his possession until six months after the alleged burglary, and, therefore, he should be acquitted. However, he does except to the charge on the ground that it failed to tell the jury to acquit if the "alleged fruit" did not belong to Mr. Parker. The court gave a full and complete charge on circumstantial evidence, telling the jury that each fact necessary to the conclusion sought must be proved by competent evidence beyond a reasonable doubt, and that all the facts must be consistent, etc, and of a conclusive nature, and must exclude to a moral certainty every other reasonable hypothesis except the guilt of the accused. This would ordinarily appear to be sufficient, but appellant and his wife having testified that in July, 1923, they put up and buried the fruit found in August thereafter by the officers, and the proof showing that the burglary had taken place in March preceding, the court charged the jury as follows:

"The defendant has introduced testimony to the effect that he came into legal and lawful possession of the canned fruit in question subsequent to the date of the alleged burglary.

"You are charged that if you believe from the evidence in this case that the defendant, Roy McNeely, came into legal and lawful possession of the canned fruit in question subsequent to the date of the alleged burglary, or if you have a reasonable doubt thereof, you cannot consider such possession as any evidence of defendant's guilt."

Appellant and his wife also having asserted that the fruit found in the garden by the officers was not the fruit of Mr. Parker, the court charged the jury as follows:

"The defendant has introduced testimony to the effect that the canned fruit in question, found in his possession, was not the property alleged to have been lost by the prosecuting witness Parker.

"You are charged that if you believe from the evidence in this case that the canned fruit in question, found in the possession of the defendant, Roy McNeely, was not the property alleged

to have been lost by the prosecuting witness, Parker, or if you have a reasonable doubt thereof, you cannot consider such possession as any evidence of defendant's guilt."

The court also chagred the jury that unless they believed from the evidence beyond a reasonable doubt that the fruit found in appellant's possession belonged to Mr. Parker, they could not convict appellant unless they further found and believed beyond a reasonable doubt that appellant was present and participated in the alleged burglary.

We are required under all the authorities to consider the charge of the court as a whole, and giving effect to this rule it seems plain that the charges above referred to brought directly before the jury whatever issue there might appear to be in the testimony involving the ownership of the buried fruit found in appellant's garden, and effectually gave to appellant the benefit of all his testimony supporting any defensive issue based on the proposition that the fruit was not the fruit of Mr. Parker. Unless some omission in the charge or instruction given be calculated, in our opinion, to affirmatively injure the rights of the accused, we are forbidden by statute to reverse for such matter.

Being unable to agree with appellant that his exception to the charge, in the matter under discussion, presents any error, and being of opinion that the case was correctly decided in our former opinion, the motion for rehearing will be overruled.

Morrow, P. J., not sitting.                                    *Overruled.*