## OWEN ARTHUR BURNET V. THE STATE.

No. 23707. Delivered October 22, 1947.

*Hughes & Monroe,* of Dallas, for appellant.

*Ernest S. Goens,* State's Attorney, of Austin, for the State.

HAWKINS, Presiding Judge.

The offense is murder predicated on the killing of Laster B. Bruton. Appellant interposed the defense of insanity and self-defense, and applied for a suspended sentence. The latter was not recommended, but the jury found him guilty of murder without malice, and fixed the maximum punishment of five years therefor.

The State's testimony shows that on the afternoon of February 22, 1947, appellant walked into the office of Bruton with a pistol and immediately upon entering, and while deceased was sitting down behind his desk, began to shoot him and continued to shoot until he had inflicted seven wounds from the effects of which deceased immediately died.

The evidence for appellant is to the effect that he and his present wife were reared in the State of Ohio where they had known each other since they were children. Appellant left his native state when a boy, came to the State of Oklahoma where he attended the A. & M. College. Later he obtained employment at Oklahoma City with the Singer Sewing Machine Company. He was subsequently transferred from Oklahoma City to Tulsa and from Tulsa to Dallas. In the year 1936 he married his present wife and they lived together until he entered the Navy.

Testimony for appellant further shows that for approximately two years prior to the time appellant volunteered in the Navy the deceased had paid appellant's wife marked attention, and by his wiles and blandishments had succeeded in alienating her affections; all of which was unknown to appellant. After appellant had volunteered his services to the Navy of the United States Mrs. Burnet, at deceased's instance, secured appellant's signature to a waiver for divorce, she telling him she might want to get one but declining to give him any information as to the real reasons. She claimed that she, as well as the deceased, obtained a divorce (arranged for by deceased) from their respective spouses at Matamoros, Mexico, and were married to each other on the same day in that foreign country. They immediately left Matamoros, came back to Dallas where they lived together as husband and wife until she secured a divorce from the deceased in October, 1945. Some time later she met her former husband, the appellant, and they were remarried. Notwithstanding she had obtained a divorce from the deceased and remarried appellant, which deceased knew, he continued to press his attention on her over her protest and to her annoyance. She went to see the District Attorney of Dallas County to ascertain from him what could or might be done to prevent the deceased from annoying her. Nothing was done until about four or five days prior to the date of the killing when the appellant joined his wife in an application to the District Court for a restraining order to restrain the deceased from communicating with either of the plaintiffs, from molesting them, or either of them, etc. The restraining order was issued as prayed for, but the officers had not served the deceased with the same at the time of the killing. However, he had received information from some source that such an order had been issued.

Appellant's wife further testified that about thirty or forty minutes before the deceased was killed he drove his automobile in such manner as to "curb" the one in which appellant's wife was riding. Deceased got out of his automobile, went to where she

was, cursed her, called her vile names, and struck her with his fist. She went immediately to a telephone, called appellant and told him what had occurred. Upon receiving this information from his wife appellant armed himself with a pistol, went to the office of the deceased and shot him. The killing occurred within fifteen or twenty minutes after appellant was informed by his wife of what had just occurred.

By bill of exception number one he complains because the Court declined to permit him to prove by the witness Patterson that a few days prior to the homicide he applied to Patterson for a transfer to some other place, and the reason why he desired a transfer; that at the time he made this request he was pale, nervous, morose, and wholly unlike himself.

The Court did permit the witness to testify to appellant's appearance at the time but declined to permit the witness to state why appellant requested the transfer and declined to permit the witness to state in detail the conversation between himself and appellant. We see no error reflected by the bill. To have permitted the witness to relate the conversation between himself and appellant would have permitted appellant to bolster up his own testimony by self-serving declaration. His appearance, his conduct, and his exclamations immediately preceding the killing were admissible as tending to show his condition of mind, which the jury was authorized to consider in connection with other relevant facts to determine his mental state at the time of the killing.

In this connection we consider bill of exception number four which shows that appellant introduced as a witness John K. Vaughn, an employee of the Singer Sewing Machine Company, who testified that a few minutes before the shooting someone called appellant over the telephone, and that appellant left the building immediately after he had the conversation over the phone. The witness testified:

"I saw him use the telephone. Someone called him to the telephone. When he got to the telephone he had a conversation with someone. I heard what he was saying. When he hung up the telephone he made an exclamation. He spoke out loud about something and then he hung up the telephone. He then turned around right in front of me and grabbed his head, like this, (witness holding his head in his hands) and rubbed his head real hard. I asked him what was the matter. He just looked at

me like he was, well, just like he was half crazy. He then turned around and walked out."

Counsel for appellant then asked the witness to relate what appellant said during the conversation and after he hung up the telephone. The State objected on the ground that same would be self-serving. If witness had been permitted to answer he would have testified further as follows:

"That while he was standing by the defendant and defendant was talking over the phone he heard the defendant say, 'Honey, I am busy now and cannot get away.' That he then said, 'What is the matter with you? You sound like you are crying.' That after a brief pause the defendant in a stunned and dazed condition hung up the telephone, threw his hands to his face and bent over in a shaking condition and exclaimed, 'My God, Bruton has beaten up my wife. Oh, my God, I cannot stand it.'"

It was appellant's contention that this evidence was admissible as res gestae. The trial court qualified the bill to show that he made no ruling which prevented the witness from testifying as to appellant's physical or mental appearance or condition at the time, but only excluded statements made by appellant. In this we think the learned trial judge fell into error. If the statements made by appellant fall into the realm of res gestae proof of them would be admissible although they may also be self-serving. As was said in Gillespie v. State, 80 Tex. Cr. R. 432, 190 S. W. 146:

"The rule of res gestae is not limited to the State's side of a case. That rule applies wherever there is a call for it, and one side of the case is as much entitled to the benefit of the rule as the other. The criterion is that it is res gestae. Res gestae statements may sometime operate as self-serving, but if they are res gestae they are still admissible."

See cases cited in the Gillespie opinion. The same principle was announced in Olison v. State, 92 Tex. Cr. R. 86, 242 S. W. 475, in which this Court said:

"* * * time alone is not the essence of the question, but that after all, the matter to be determined is: Was the statement a spontaneous speaking of the facts themselves * * *."

See also Williams v. State, 112 Tex. Cr. R. 482, 17 S. W. (2d) 1057. We think the evidence excluded should have been ad-

mitted. It should have gone to the jury for consideration in solving the issues before them.

Bill of exception number two reflects the following occurrence. Mrs. Burnet testified in chief that after her husband joined the Navy she went to the naval base and induced him to sign a "divorce waiver" which had been given to her by the deceased. She further testified that she and deceased went to Matamoros where they both procured a divorce from their respective spouses; that they then and there married.

On cross examination, the State elicited from her the following:

"When I went to Matamoros and got my Mexican divorce, Mr. Bruton, the deceased, was with me. The Mexican lawyer got the divorces and all we had to do was to sign. The Mexican lawyer's name was Chavez. Yes, I will spell it, C-h-a-v-e-z. I had never seen him before. I presume he had some official capacity there. I presume he was a Justice of the Peace, Mayor, or something. I say he was a lawyer. We were married by the same person (Chavez). Mr. Henderson was the witness, he was a former American citizen, he was a guide for fishing parties."

The State then proved by T. O. Bruton, a brother of deceased, that he went to Matamoros, Mexico, to search for a Mexican lawyer by the name of Chavez but did not find any man in Matamoros by that name, either practicing law, preaching, or a Justice of the Peace; that such a man was not known there; that he also inquired for a man by the name of Henderson, but could not find any man in Matamoros by that name. To the testimony of Mr. Bruton various objections were urged, among them that it was impeaching appellant's material witness on immaterial and collateral facts. The objections were overruled and appellant duly excepted. We entertain serious doubt as to the admissibility of Mr. Bruton's testimony. Something occurred in Mexico which lead appellant's wife to believe she had been divorced from appellant and had married deceased. She procured a divorce from deceased before remarrying appellant. We do not discuss the matter further, believing the judgment must be reversed for the error shown in bill of exception number four. It appears doubtful whether Mr. Bruton's testimony related to a material matter.

Bill of exception number three reflects the following occurrence. After appellant's main witness, his wife, had testified that she had obtained a divorce from the deceased and remarried appellant, deceased, renewed his attentions and constantly called her over the telephone. On cross-examination the State inquired of her if she did not call the deceased's office many times with the purpose of talking to him, which she denied. The State then called one A. M. Whaley and proved by him.that he was associated with the deceased; that he knew the deceased and his wife, the present Mrs. Burnet, had been divorced; that after the divorce she continued to call the office frequently up to about the 10th day of January; that witness often answered the telephone and being familiar with her voice, recognized her as the party calling for Bruton, the deceased. To the testimony given by Whaley appellant timely objected on the ground that the conversations were in his absence and not binding on him, and he also objected on the ground that it was an attempt to impeach the witness on immaterial and collateral facts.

It occurs to us that appellant's contention that the impeaching evidence was upon an immaterial and collateral issue is unsound. Appellant's wife had left the impression on the jury that after she had secured a divorce from deceased and remarried appellant deceased constantly, and against her wishes had continued to call her over the telephone, much to her annoyance. The cross examination need not be directed to any exact inquiry made of her on direct examination. It is sufficient if the predicate for impeachment is laid in the cross examination of the wife upon an issue pertinent to her evidence elicited upon her direct examination. We do not discuss this question at length. It has been many times considered and our conclusion is directly supported by the following authorities. Hicks v. State, 97 Tex. Cr. R. 373, 261 S. W. 579; Marx v. State, 141 Tex. Cr. R. 628, 150 S. W. 1014; Huey v. State, 142 Tex. Cr. R. 522, 155 S. W. 61. The court properly limited this testimony in his charge.

By bill of exception number five appellant complains because the court declined to submit his special requested charge number one. We have examined the charge in question and have reached the conclusion that the court did not err in declining to submit the same because it singled out certain testimony and was a charge on the weight of the evidence.

A number of objections were urged to the Court's charge and a number of special charges were requested and refused.

We have considered the same in connection with the court's main charge and have reached the conclusion that the court in his charge fairly and adequately applied the law of the case to the facts, and regard it as unnecessary to discuss the questions at length.

Because of the error complained of in bill of exception number four the judgment is reversed and the cause remanded.